UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS F. BRENNAN,

                          Petitioner,                    Case Number 2:09-CV-10094
                                                         Honorable Paul D. Borman
v.

CARMEN D. PALMER,

                          Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS,
(2) GRANTING A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING AN
APPLICATION FOR LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

**I. Introduction**

Petitioner, Thomas F. Brennan, filed this action under 28 U.S.C. § 2254.  Petitioner is a

state prisoner serving a sentence of 11-to-30 years for his St. Clair Circuit Court jury trial

conviction of first-degree criminal sexual conduct.  MICH. COMP. LAWS 750.520(B)(1)(a).

Petitioner challenges his conviction on six grounds: (1) the jury's verdict was against the great

weight of the evidence; (2) the cumulative effect of numerous trial errors rendered the trial

unfair; (3) the trial court scored the sentencing guidelines incorrectly; (4) trial counsel was

ineffective for failing to raise several objections at trial; (5) the prosecutor committed

misconduct in presenting irrelevant evidence; and (6) appellate counsel was ineffective for

failing to raise claims four and five during direct appeal.  The Court will deny the petition

because Petitioner's first three claims are without merit and because review of Petitioner's

remaining claims is barred by his procedural default of failing to raise them during his direct

appeal.

## II. Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See*

*Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> The incident at issue allegedly occurred on August 6, 2001. On that day, the
> complainant and her two brothers were swimming at a neighbor's pool, two
> houses away. Amanda, a fifteen-year-old girl who lived in the home the
> complainant had been visiting, and who babysat for the complainant testified that
> at some point, defendant called the complainant home to eat, but did not want her
> brothers to come as well. About an hour and a half later, Amanda heard the
> complainant crying as she was coming down the street. The complainant jumped
> into Amanda's arms and said that defendant had hurt her with his "pee pee" and
> his finger. The complainant testified at trial that defendant had touched her vagina
> with his penis and his finger. The pediatric nurse who examined the complainant
> on August 7 testified that the child had suffered an injury to her hymen that was
> the result of penetration by a penis or some other object of similar size.

*People v. Brennan, People v. Brennan*, 2004 Mich. App. LEXIS 3246, *1-2 (Mich. Ct. App.

Nov. 30, 2004).

Following his conviction, Petitioner filed a direct appeal in the Michigan Court of

Appeals. His appellate brief raised three claims:

I. Defendant's conviction was against the great weight of the evidence.

II. The cumulative effect of several trial errors denied defendant a fair trial:

> A. Insufficient evidence was presented at the preliminary examination to
> justify binding defendant over for trial.

> B. The trial court erroneously allowed admission of testimony that
> defendant's children were placed in protective custody.

> C. Defendant was prohibited from eliciting opinion testimony concerning
> a prosecution witness's character for truthfulness.

> D. The trial court's incorrect application of the rape-shield statute
> prevented defendant from eliciting testimony to explain the condition of

2

the complainant's vagina.

E.  The trial court erroneously determined that the complainant was competent to testify at trial.

F.  The trial court engaged in improper ex parte communication with a juror.

III.  The trial court incorrectly scored the sentencing guidelines.

The Court of Appeals affirmed in an unpublished opinion.  *Id.*  Petitioner subsequently filed an application for leave to appeal, raising the same claims he asserted in the Michigan Court of Appeals.  The Michigan Supreme Court denied the application because the Court was not persuaded that the questions presented should be reviewed.  *People v. Brennan*, 474 Mich. 1098 (2006).

Petitioner returned to the trial court and filed a motion for relief from judgment.  The motion raised what now form Petitioner's fourth, fifth, and sixth habeas claims.  The trial court denied the motion by opinion and order dated February 20, 2007.  It found that to the extent Petitioner attempted to raise claims he presented in his direct appeal, review of the claims was barred by Michigan Court Rule 6.508(D)(2).  It also found that Petitioner's new claims were barred from review because Petitioner had failed to demonstrate good cause and actual prejudice for failing to raise them earlier under Rule 6.508(D)(3).

Petitioner appealed this decision to the Michigan Court of Appeals.  That court denied relief "for lack of merit in the grounds presented."  *People v. Brennan*, No. 283132 (Mich. Ct. App. June 17, 2008).  The Michigan Supreme Court subsequently denied relief with citation to Rule 6.508(D).  *People v. Brennan*, 482 Mich. 1067 (2008).

Petitioner then filed the instant application for habeas relief, asserting the claims he

3

presented to the state courts on direct and collateral review.

## III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((*quoting Lindh v.*

4

*Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing

5

law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-787.

## IV. Discussion

### A. Great Weight of the Evidence

Petitioner first claims that the verdict went against the great weight of the evidence. He

primarily points to the fact that the complainant was four years old when she testified and was

led by the prosecutor, and that the examining nurse who observed the injuries to the

complainant's hymen said that the injuries were a few days old, though the incident occurred the

day before the examination.

A federal habeas court has no power to grant habeas relief on the ground that a state

conviction is against the great weight of the evidence. *Cukaj v. Warren*, 305 F. Supp. 2d 789,

796 (E.D. Mich. 2004); *See also Artis v. Collins*, 14 Fed. Appx. 387 (6th Cir. 2001) (declining to

grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the

manifest weight of the evidence). A claim that a verdict went against the great weight of the

evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so

devoid of evidentiary support that a due process issue is raised. *Cukaj*, 305 F. Supp. 2d at 796.

The test for habeas relief is not whether the verdict was against the great weight of the

evidence, but whether there was any evidence to support it. *Dell v. Straub*, 194 F. Supp. 2d 629,

648 (E.D. Mich. 2002). As long as there is sufficient evidence to convict petitioner of these

crimes, the fact that the verdict may have gone against the great weight of the evidence would

not entitle him to habeas relief. *Id.*

To the extent that petitioner challenges the sufficiency of evidence to convict him, he

would not be entitled to habeas relief. In reviewing a habeas petitioner's claim that the evidence

6

was insufficient to convict him a court must determine whether, viewing the trial testimony and

exhibits in the light most favorable to the prosecution, any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.

307, 319 (1979)). In doing so, the court does not reweigh the evidence, re-evaluate the

credibility of witnesses, or substitute its judgment for that of the jury. *United States v. Hilliard*,

11 F.3d 618, 620 (6th Cir.1993). Therefore, even if a federal habeas court might have not voted

to convict a defendant had it participated in the jury deliberations, it must uphold the jury

verdict if any rational trier of fact could have found the defendant guilty after resolving all

factual disputes in favor of the prosecution.

In the present case, Petitioner claims the evidence did not demonstrate beyond a

reasonable doubt that he sexually assaulted the complainant. He argues that the complainant's

testimony was unreliable due to her young age and by the fact that the prosecutor was allowed to

use leading questions. He also asserts that while a nurse testified that she observed injuries to

the complainant's genital area, including a tear to her hymen, she testified that the injuries were a

few days to a week old. The nurse examined the complainant one day after the incident. The

weight to which eyewitness testimony is given at trial is a matter for the jury, not for a court

reviewing a claim of legally insufficient evidence. *See Cameron v. Birkett*, 348 F. Supp. 2d 825,

839-840 (E.D. Mich. 2004). In this case, the complainant testified at trial that her daddy,

Petitioner, hurt her. When the prosecutor asked her where he hurt her, she indicated with her

hand her genital area. When the prosecutor asked her how he hurt her, the complainant testified

with his "potty." This testimony was corroborated by the babysitter's testimony that the

complainant ran down the street crying and screaming, jumped in her arms, and told her that

Petitioner had hurt her with his "pee pee." This testimony, if believed, together with the

evidence that the complainant's hymen was injured by an object such as the erect adult penis,

was sufficient to allow a rational juror to find beyond a reasonable doubt that Petitioner

committed the offense. Petitioner is not entitled to habeas relief on his first claim.

## B. Cumulative Trial Error

Petitioner's second claim is comprised of six separate allegations of error.[1] The

allegations must be reviewed individually. As the Sixth Circuit has noted, the Supreme Court

"has not held that distinct constitutional claims can be cumulated to grant habeas relief."

*Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002).

## 1. Sufficiency of the Criminal Information

Petitioner asserts that the criminal information should have been quashed because there

was insufficient evidence presented at the preliminary examination to warrant his bind-over for

trial. There is no federal constitutional right to a preliminary examination. *See Gerstein v. Pugh*,

420 U.S. 103, 125 n.26(1975). Petitioner's claim that the prosecutor presented insufficient

evidence at the preliminary examination to bind him over trial raises only a matter of state

law and procedure that cannot form a basis for federal habeas relief. *Pulley v. Harris*, 465 U.S.

37, 41 (1984); *Scott v. Bock*, 241 F.Supp.2d 780, 793 (E.D. Mich. 2003).

---

[1] Respondent's only answer to Petitioner's second claim is a half-page of boilerplate asserting that it does not present any federal issues. This is wholly unsatisfactory and inexcusable. Even a cursory review of Petitioner's state court briefs shows that several of the arguments presented explicitly raised federal issues. And if Respondent had bothered to review the Michigan Court of Appeal's decision, it would have noted that each of the arguments making-up this issue were separately addressed. Most significantly, and as will be discussed below, Petitioner raises a substantial and potentially meritorious claim concerning the use of the rape shield statute to exclude evidence regarding the source of the complainant's injury. The argument deserved detailed attention but received none.

8

**2. Evidence that Petitioner's Children Were Placed in Foster Care**

Petitioner next asserts that his trial was rendered unfair by the presentation of evidence that a Children's Protective Services agent placed Petitioner's three children in foster care after the nurse examined the complainant.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

There was nothing unduly prejudicial about the agent's testimony that she placed the children in foster care after the nurse's examination. *See Baker v. Warren*, No. 07-cv-11065, 2010 U.S. Dist. LEXIS 29588, at *11-12 (E.D. Mich. March 29, 2010) (explaining that a witness in a child sexual assault prosecution may testify regarding his or her reasons for removing the complainant from the household, even if the testimony goes to an ultimate issue in the case). It is hardly surprising that the children were removed from Petitioner's home after a physical examination revealed evidence of sexual abuse. Moreover, the testimony explained to the jury why the complainant appeared at trial in the company of another adult. The brief reference to the children being placed in foster care did not render Petitioner's trial fundamentally unfair.

**3. Exclusion of Evidence Regarding Pamela Carroll's Reputation for Truthfulness**

Petitioner next asserts that the trial court violated his right to confrontation when it prohibited him from eliciting testimony from a witness that Pamela Carroll, the mother of the

9

babysitter, was dishonest.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit the witness." *Id*. at 314.

In analyzing whether an evidentiary restriction violated the Confrontation Clause, "the Supreme Court has 'distinguished between a "general attack" on the credibility of a witness—in which the cross-examiner "intends to afford the jury a basis to infer that the witness's character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony"—and a more particular attack on credibility "directed toward revealing possible biases, prejudices, or ulterior motives as they may relate directly to issues or personalities in the case at hand."'" *Lewis v. Wilkinson*, 307 F.3d 413, 419 (6th Cir. 2002) (quoting *Boggs*, 226 F.3d at 736 (interpreting *Davis* and *Delaware v. Van Arsdall*, 475 U.S. 673, 681-84 (1986), as setting forth the clearly-established rule that "cross-examination as to bias, motive or prejudice is constitutionally protected, but cross-examination as to general credibility is not.").

Here, Pamela Carroll testified that after her daughter told her what had happened with the complainant, she talked about it with Susan Boudreau, a neighbor. The complainant was then brought to Boudreau's house, and Carroll and Boudreau examined her genital area. At trial, both

10

Carroll and Boudreau testified that the complainant's vaginal area appeared to be red and swollen. On cross-examination, Boudreau conceded that she has written a letter stating that it looked more like a rash than swollen, but she explained the inconsistency by testifying that it could have been either one. Defense counsel then attempted to elicit from Boudreau that Carroll had a reputation for dishonesty. Apparently, the point was to discredit Carroll's more definitive description of the complainant's vaginal area as being swollen. That is, Petitioner was not attempting to show that Carroll was somehow biased against Petitioner, he was merely attempting to attack her general credibility. Because such an attack is not protected by clearly established Supreme Court precedent, it cannot provide a basis for granting habeas relief.

**4. Application of Rape Shield Statute**

Petitioner next asserts that the trial court improperly applied the rape shield statute, Michigan Compiled Law 750.520j, when it prevented Petitioner from presenting evidence that the complainant and her brother had engaged in an activity that resulted in the complainant's injuries. While it was error to exclude the evidence, the Court finds that the error did not have a substantial impact on the result of the trial and was therefore harmless.

At trial, defense counsel made the following offer of proof:

> [The complainant's] mother, Lucinda, will testify that she observed [the complainant] naked sitting on top of [her eight-year-old brother] naked. This could be an explanation for a redness or swolleness of the vaginal area. Keith Brough will testify to the same, that he observed this. [The eight year old] will testify. I believe [he] will, that [he], I'm not sure, I don't know how he's going to word it, but that he touched [the complainant]. That would explain [her] redness, swollen in the vaginal area.

Tr. Vol. I, at 185-186.

Despite the argument that the proffered testimony was being offered to show an

independent source of injury–an exception to the rape shield statute's evidentiary bar–the trial court found that the proffered testimony was nevertheless prohibited by the statute. The Michigan Court of Appeals found that it was error to exclude the testimony as an alternate explanation for the irritated condition of the complainant's vagina, but that "no error requiring reversal occurred because the proffered evidence did not provide an alternative explanation for the injury to the complainant's hymen." *Brennan*, at *2.

Because the state court acknowledged that it was error to exclude the evidence, the question here is whether the error was harmless. Violations of a defendant's right to present a defense are subject to harmless-error analysis. *Fleming v. Metrish*, 556 F.3d 520, 536 (6th Cir. 2009). On habeas review, a court must assess harmlessness under the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), regardless of whether the state appellate court recognized the error and reviewed it for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007); *see also Vasquez v. Jones*, 496 F.3d 564, 574-575 (6th Cir. 2007). Under that standard, habeas relief cannot be granted unless the constitutional error in the state criminal trial had a "substantial and injurious effect" on the result. *Brecht*, 507 U.S. at 638. In *O'Neal v. McAninch*, 513 U.S. 432, 438 (1995), the Supreme Court clarified that this language "is not determinative," and that petitioners do not bear an affirmative burden of proof as the language suggests. Instead, "it [is] conceptually clearer for the judge to ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?' than for the judge to try to the put the same question in terms of proof burdens (e.g., 'Do I believe the party has borne its burden of showing . . . ?')." *O'Neal*, 513 U.S. at 436-37.

The Court agrees with the state appellate court that the error was harmless. The state

court distinguished between the complainant's external injuries–the redness and swelling of the vagina–and the internal injury–the condition of the hymen. The excluded evidence only addressed the external injuries. There was no suggestion that the complainant's eight-year-old brother penetrated his sister or caused the injury to the hymen. Sharon Johnston, the nurse who examined the complainant the day after the incident, testified that she was a specialist in child sexual assault cases. She explained that the injury to the complainant's hymen could not have been caused without penetration of an object like an erect adult penis. The object had to be large enough to stretch the edges of the hymen to the point that it caused a tear. Johnston testified that something like a pencil or crayon would not be big enough to have caused the injury. Nor did she believe that masturbation could have caused the injury. The proffered defense evidence therefore would not have explained this injury even if it would have explained the redness and swelling observed by Carroll and Boudreau.

Morevoer, the evidence presented against Petitioner was otherwise strong. Amanda, the babysitter, testified that Petitioner called the complainant home to eat, and that later the complainant ran back crying and said that Petitioner had hurt her with his "pee pee." She also described an earlier incident when she observed through a window of Petitioner's house complainant fondle Petitioner's penis. And Johnston testified that the condition of the complainant's hymen was consistent with repeated penetration. The complainant was able to indicate with her hands and words at trial how the Petitioner had hurt her. There was no convincing evidence presented that she had coached or otherwise manipulated into falsely accusing Petitioner of the offense.

For these reasons, the Court finds that the error in excluding the proffered evidence did

13

not have a substantial impact on the outcome of Petitioner's trial.  The error was therefore harmless and does not provide a basis for granting habeas relief.

**5.  Complainant's Competence to Testify**

Petitioner next asserts that the trial court erroneously found the complainant competent to testify at trial.

Petitioner has not pointed to any federal court decision that requires state trial courts, as a matter of federal constitutional law, to determine whether a prosecution witness is competent to testify.  His claim is based on state law, but the trial court's alleged violation of the Michigan Rules of Evidence is not a basis for granting habeas relief. *See Estelle, supra.*

In Michigan, witnesses are presumed to be competent. See MICH. R. EVID. 601 (stating that "[u]nless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules").  "The determination of the competency of a witness is a matter within the discretion of the trial court." *People v. Breck*, 230 Mich. App. 450, 457 (1998).  Petitioner has not shown that the trial court's determination that the complainant was competent to testify violated his federal constitutional rights.

**6.  Ex Parte Communication with Juror**

Petitioner next asserts that there was an impermissible ex parte communication between the trial judge and a juror.

During trial, a distraught juror approached the trial judge and informed him that her husband had become ill and that she did not know that she could continue to serve on the jury.

14

The trial judge promptly informed counsel of the communication and informed them that he intended to hold a private meeting with the juror in his chambers to determine whether she should be excused for cause. The court asked if there was any objection to the meeting, and neither attorney voiced any concern. Following the meeting, the trial court stated that the juror would not be excused. Neither attorney raised any objection. The Michigan Court of Appeals found that while it would have been preferable for the meeting to occur in the presence of counsel, there was no error because the ex parte communication did not pertain to the substance of the case but rather to personal matters concerning the health of a juror's spouse.

The right of the accused to be present during all critical stages of a trial against him is fundamental. *See Rushen v. Spain*, 464 U.S. 114, 117 (1983). Ex parte communications are absolutely discouraged and a question from the jury should be answered in open court, after providing the defendant with an opportunity to be heard. *See Rogers v. United States*, 422 U.S. 35, 39 (1975); *United States v. Reynolds*, 489 F.2d 4, 7-8 (6th Cir. 1973). Nevertheless, even if a judge improperly participates in ex parte communications, such communications will not necessarily constitute reversible error. *See Rushen*, 464 U.S. at 118-19; *Miller v. Am. President Lines, Ltd.*, 989 F.2d 1450, 1468 (6th Cir. 1993). There must be a reasonable possibility that the ex parte communications affected the verdict.

In this case, the state trial judge properly disclosed in open court and on the record that he has communicated ex parte with a juror and that he planned to meet with the juror in private. *See Rushen v. Spain*, 464 U.S. 114, 119-20 (1983) (stating that "when an ex parte communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties."). If Petitioner's counsel had been concerned about the

15

communications relayed by the judge, he could have voiced his concern, and an appropriate

hearing could have been conducted.  However, Petitioner offers no evidence that the

communications in question affected his substantial rights.  There is no indication on this record

that the deliberations were hurried as a result of one juror's concern for her husband's health.

The claim is therefore without merit.

**C. Sentencing Guidelines**

Petitioner asserts that the trial court incorrectly scored the sentencing guidelines.  This is

not a cognizable claim for federal habeas review, because it is basically a state law claim. *See*

*Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Robinson v. Stegall*, 157 F. Supp. 2d

802, 823 (E.D. Mich. 2001).  "Petitioner has no state-created interest in having the Michigan

Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder*,

644 F. Supp. 2d 846, 867 (E.D. Mich. 2009)(citing *Shanks v. Wolfenbarger*, 387 F. Supp. 2d

740, 752 (E.D. Mich. 2005).  "[I]n short, petitioner had no federal constitutional right to be

sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*,

347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Petitioner's claim that the sentencing guidelines

were incorrectly scored fails to state a claim upon which habeas relief can be granted. *See Cook*

*v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D.Mich. 1999).

**D. Claims Raised on State Collateral Review**

Petitioner's remaining claims were raised in his motion for relief from judgment filed in

the state trial court and the appeal that followed from its denial.  The state trial court denied

relief under Rule 6.508(D)(3) because Petitioner did not demonstrate good cause and actual

prejudice for failing to raise his new claims during his direct appeal.  The basis for the trial

16

court's decision also bars review of Petitioner's claims in this action.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is adequate and independent. *See White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). The last explained state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-805 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

The Sixth Circuit held that the form orders used by the Michigan appellate courts in this case are unexplained because they are ambiguous as to whether they refer to a procedural default or the denial of right on the merits. *Dorn v. Lafler*, 601 F.3d 439, 443 (6th Cir. 2010) (form order denying relief "for lack of merit in the grounds presented" is ambiguous as to basis for denial); *Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010) (form order citing Rule 6.508(D) is ambiguous as to basis for denial. Under *Guilmette*, the Court must "look through" the unexplained orders of the Michigan appellate courts to the decision of the state trial court to determine the basis for the denial of state post-conviction relief. Here, in considering and denying Petitioner's motion for relief from judgment, the trial court specifically determined that review of Petitioner's new claims was procedurally defaulted under Rule 6.508(D)(3).

Petitioner's asserts ineffective assistance of appellate counsel as cause to excuse the procedural default of his other claims. Petitioner has not shown that appellate counsel was ineffective. In order to establish ineffective assistance of appellate counsel, Petitioner must

17

show "that counsel's performance was deficient . . . [and] that the deficient performance

prejudiced the defense." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining

whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the
> identified acts or omissions were outside the wide range of professionally
> competent assistance . . . . At the same time, the court should recognize that
> counsel is strongly presumed to have rendered adequate assistance and made all
> significant decisions in the exercise of reasonable professional judgment.

*Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Therefore, judicial scrutiny of counsel's

performance must be "highly deferential." *Id.* at 689.  The defense is prejudiced only if "there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to

have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S.

745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in
> the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly

left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th

Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing

out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v.

Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when

ignored issues are clearly stronger than those presented will the presumption of effective

18

assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir.

2002). Appellate counsel may deliver deficient performance and prejudice a defendant by

omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and

would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D.

Mich. 2003).

Petitioner fails to show that by omitting the new claims presented in his motion for relief

from judgment, appellate counsel's performance fell outside the wide range of professionally

competent assistance. Appellate counsel presented legitimate and viable issues in Petitioner's

direct appeal. In fact, Petitioner still advances those same claims in this petition. In particular,

Petitioner's claim that the trial court violated his right to present a defense by excluding evidence

offering an alternative explanation for some of the complainant's injuries, though harmless in

this Court's view, is one on which reasonable jurists might differ. Petitioner has therefore not

shown that appellate counsel's strategy in presenting those claims and not raising the new claims

contained in the motion for relief from judgment was deficient or unreasonable. Petitioner fails

to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his

procedural default. These claims are barred from review.

## V. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, which was

amended as of December 1, 2009:

> The district court must issue or deny a certificate of appealability when it enters a
> final order adverse to the applicant. . . . If the court issues a certificate, the court
> must state the specific issue or issues that satisfy the showing required by 28
> U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the
> denial but may seek a certificate from the court of appeals under Federal Rule of
> Appellate Procedure 22.

19

Rule 11, Rules Governing Section 2254 Proceedings.

When a district court denies a habeas petition a certificate of appealability should issue only if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In the present case, for reasons stated in greater detail in the opinion and order denying the petition, this Court found that Petitioner's application for a writ of habeas corpus is meritless. The Court will deny petitioner a certificate of appealability with respect to all of his claims save one because reasonable jurists would not find it debatable whether this Court was correct in determining that those claims are without merit.

The Court will grant a certificate of appealability with respect to Claim II(D), asserting that his right to present a defense was violated by the exclusion of defense evidence that the complainant's brother was the source of some of her injuries. Reasonable jurists would find it debatable whether this error was harmless or had a substantial impact on the result of Petitioner's trial.

The Court will grant Petitioner leave to appeal in forma pauperis, because an appeal would not be frivolous. *Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## VI. Conclusion

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **GRANTS** a certificate of appealability with respect to Claim II(D) and **GRANTS** leave to appeal in forma pauperis.

**SO ORDERED.**

Honorable Paul D. Borman
United States District Judge

Dated: 12-13-11